No. 808          November 14, 2024          131

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

MICHAEL SHANE AKERS,
aka Michael Akers, aka Michael C. Akers,
aka Michael S. Akers,
*Defendant-Appellant.*

Jackson County Circuit Court
20CR43393; A179143

Kelly W. Ravassipour, Judge.

Argued and submitted August 29, 2024.

Kristin A. Carveth, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Peenesh Shah, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Tookey, Presiding Judge, Egan, Judge, and Kamins, Judge.

EGAN, J.

Affirmed.

**EGAN, J.**

Defendant appeals from a judgment convicting him, after a jury trial, of two counts of felon in possession of a firearm, ORS 166.270(1), two counts of felon in possession of a restricted weapon, ORS 166.270(2), and one count each of unlawful possession of heroin, ORS 475.854, and unlawful possession of methamphetamine, ORS 475.894. Defendant's assignments of error, some of which are unpreserved, concern the trial court's rulings on defendant's purported waiver of counsel and the court's failure to appoint new counsel, to allow defendant to represent himself, to allow a continuance, or to give a special instruction when appointed counsel declined for ethical reasons to question defendant and defendant instead presented his testimony in narrative form. As to defendant's preserved challenges, we conclude that the trial court did not err or abuse its discretion. As to defendant's unpreserved challenges, we conclude that there was no plain error. Accordingly, we affirm defendant's convictions.

We summarize the facts that bear on the issues raised on appeal. Pretrial, in the context of plea negotiations, defendant asked the court to remove his third court-appointed counsel, Perkins. After inquiry, the court declined to appoint new counsel, determining that Perkins was providing adequate representation.

On the morning of trial, before jury selection and during a further discussion of plea negotiations, defendant again asked the court to remove his counsel and allow an extension so that he could hire new counsel. The court heard defendant's concerns and again rejected the request, stating that defendant had "an extremely qualified attorney representing you who's prepared to go and did an excellent job in our discussions this morning."

Still pretrial, during a continued discussion of plea negotiations and a discussion of defendant's willingness to stipulate to a former felony conviction for purposes of the felon-in-possession charge, defendant again complained that he needed new counsel. Perkins had advised the court that defendant would stipulate to a single felony conviction to avoid requiring the state to bring in documentation of all

of defendant's former convictions. But defendant then disagreed, explaining that he would not stipulate to the former conviction, because he wanted the jury to know about all his past felony convictions. Defendant said, "I'm ready to represent myself." At that point, the court gave no advice to defendant as to self-representation. The conversation continued regarding defendant's desire not to stipulate to a prior felony conviction. The court noted that defendant would not stipulate to his former conviction and advised defendant that the state would therefore be permitted to provide evidence of all of defendant's former convictions.

Mid-trial, in the state's case in chief, after two witnesses had testified, defendant interrupted to express dissatisfaction with his counsel:

> "How much do you guys pay him to do this? He's asked two questions. Nothing of what I've asked him to do."

The court advised defendant to wait. Defendant then stated,

> "No, because I want—they need to hear. That's the reason why I waived my right to let them know my past, my history, my felonies, and everything. I want them to know who I am.
>
> "THE COURT:   Okay. Mr. Akers, right now, the State is putting on their case and what you need to understand—a lot of their questions—
>
> "THE DEFENDANT:   I want to represent myself.
>
> "THE COURT:   No. I know a lot of the questions that you're wanting to ask, most likely are not allowed by the rules of evidence. You have an attorney who knows what can be asked and what can't be asked. Mr. Perkins is doing an excellent job despite you trying to disrupt the trial. You're not helping yourself and the jurors are sitting there, and they see you get flustered.
>
> "The best thing that you can do is let your attorney do his job. If there's something specific, write it down. We can take breaks if you feel like you need to talk to him.
>
> "THE DEFENDANT:   Can I give them to you?
>
> "THE COURT: No, you can't give those to me, Mr. Akers. He's doing an excellent job—

"THE DEFENDANT:   No, he's not.

"THE COURT:   And he's only allowed to ask certain questions. So you have an opportunity to put on evidence and call your own witnesses.

"THE DEFENDANT:   Don't I have the opportunity to represent myself?

"THE COURT:   This trial—

"THE DEFENDANT:   Do I not have that right?

"THE COURT:   —has started.

"THE DEFENDANT:   And I would like to fire him."

A lengthy discussion among the court, counsel, and defendant ensued concerning defendant's complaint that Perkins had told defendant that he would not call him to testify. The court and prosecutor assured defendant that he had a right to testify. Defendant then launched into a discussion of his failed attempts to hire other legal counsel:

"I cannot find legal counsel because of conflict of interest because of all the identity thefts that the State has put on me since being incarcerated, ma'am.

"That is—so at this point, I'm ready to represent myself. That's all I'm asking is I just want a fair trial. If I'm found guilty by the jury, then so be it. If I put my foot in my mouth and I end up saying something, that's fine. I'm okay with that. But I'm not okay with sitting here and having to be quiet and keep my mouth shut because he said so."

At that point, at the prosecutor's suggestion, the court engaged in a full colloquy with defendant about the pitfalls of self-representation. Defendant continued to reference his desire to hire new counsel. But the court told defendant that there would be no new counsel, and told defendant:

"*The question is if you want to represent yourself.* There obviously are a number of things that you're not qualified. I don't believe you're qualified to –

"THE DEFENDANT:   *I don't*—

"THE COURT:   —represent yourself.

"THE DEFENDANT:   I agree with you, ma'am."

(Emphasis added.) The court then stated that Perkins would continue to represent defendant, and defendant agreed.

The state completed its case in chief. Defendant wished to testify. But citing "ethical reasons," defendant's trial counsel said that he would not question defendant.[1] Counsel suggested that defendant could take the stand and make a narrative sworn statement. The court and the prosecutor agreed with that procedure. Defendant asked if he could have a continuance to the next day to prepare some testimony. The court denied the request. Defendant then took the stand and gave a narrative sworn statement.

The next day, at the close of the evidence, defendant told the court that he wished to represent himself. The court again advised defendant of the pitfalls of self-representation and told defendant that the only remaining portions of the trial were the instructions to the jury and deliberations. Defendant persisted in his desire to represent himself. The court presented defendant with a form for a waiver of counsel, which defendant signed.

Defendant and the prosecutor then presented their closing arguments, and the jury deliberated and returned guilty verdicts on all of the charges.

In his first assignment of error, defendant contends that, after defendant's pretrial statement, "I'm ready to represent myself," the trial court should have conducted a full colloquy and inquiry into whether defendant would knowingly and voluntarily waive counsel. We assume, for the sake of discussion, that defendant's argument is preserved.

---

[1] Oregon Rule of Professional Conduct 3.3 provides:

"The Oregon Rules of Professional Conduct prohibit a lawyer from knowingly offering false evidence:

"(a) A lawyer shall not knowingly:

"* * * * *

"(3) offer evidence that the lawyer knows to be false. * * * A lawyer may refuse to offer evidence other than the testimony of a defendant in a criminal matter, that the lawyer reasonable believes is false.

"(b) A lawyer who represents a client in an adjudicative proceeding and who knows that a person intends to engage, is engaging or has engaged in criminal or fraudulent conduct related to the proceeding shall take reasonable remedial measures, including, if permitted, disclosure to the tribunal."

A request to waive counsel and represent oneself must be clear and unequivocal, and whether a trial court has denied a request for self-representation is a question of law. *State v. Groff*, 306 Or App 40, 45, 472 P3d 812, *rev den*, 367 Or 387 (2020). We have reviewed the pertinent portions of the record. Understood in context,[2] we conclude that defendant's statement was not a clear and unequivocal request to waive counsel, and that, therefore, there was no denial by the trial court of a request for self-representation or error in failing to engage in colloquy with defendant about waiver of counsel.

In his second assignment, defendant contends that the trial court erred in denying his request, made mid-trial, to waive counsel and represent himself, asserting that the trial court applied an incorrect legal standard in basing its decision on the determination that defendant was not qualified to represent himself.

A ruling on waiver of counsel is reviewed for an abuse of discretion. *State v. Nyquist*, 293 Or App 502, 507, 427 P3d 1137 (2018). Once again, we have reviewed the pertinent portions of the record. From the colloquy between defendant and the court, it is clear that defendant was not

---

[2] Defense counsel addressed defendant concerning his willingness to sign a stipulation to a single former felony conviction:

"MR. PERKINS:  Do you want to sign or not?

"THE DEFENDANT:  No. I want the State to—I want the jurors to know what I've done in my history. I understand I've made mistakes—

"MR. PERKINS:  Okay.

"THE DEFENDANT:  —but I don't want them to be just led to believe stuff that's not true.

"*****

"THE DEFENDANT:  I'm ready to represent myself.

"(Pause)

"[PROSECUTOR]  *** [Mr. Perkins] I certainly don't presume to tell your business, but do you want to go over that on the record just to avoid any complications down the road?

"MR. PERKINS:  Sure.

"THE DEFENDANT:  Let's—

"[PROSECUTOR]:  Yeah, we should.

"THE DEFENDANT:  Let's do the math."

Later, during trial, defendant told the court,

"I waived my right to let them know my past, my history, my felonies, and everything. I want them to know who I am."

actually seeking to represent himself at that time but was instead again seeking substitute counsel. Additionally, after being advised of the risks of self-representation and in response to the court's question whether he wished to represent himself, defendant replied that he did not. Thus, we conclude that there was no abuse of discretion by the trial court in declining to allow defendant to represent himself.

In his third assignment of error, defendant contends that after Perkins declined to guide defendant through questioning and suggested that he testify in narrative form, the trial court plainly erred in failing to discharge Perkins and appoint new counsel. Defendant did not raise that argument at trial; thus, it is unpreserved.

As an initial matter, we reject defendant's contention that preservation would have been futile. Although the trial court had previously ruled against defendant on requests for substitute counsel after determining that defendant had adequate representation, those rulings did not necessarily forecast how the trial court would have ruled on a new request made under the circumstances of counsel's refusal to guide defendant's testimony for ethical reasons.

And we further reject defendant's the contention that the failure of the trial court to *sua sponte* appoint new counsel constituted plain error. To support review for plain error, the asserted error must be one of law that appears on the face of the record and is obvious or not reasonably in dispute. *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 381, 823 P2d 956 (1991). Here, the legal point raised by defendant—his argument that, in response to counsel declining for ethical reasons to examine him, the court was required to allow defendant to represent himself—is not "obvious."

Plain error review is further complicated by the fact that the ruling that defendant asserts the trial court should have made *sua sponte* is one that we would review in the preserved context for an abuse of discretion—that is, for whether the trial court's ruling was within the range of legally correct alternatives. *See State v. Rogers*, 330 Or 282, 312, 4 P3d 1261 (2000) ("If the trial court's decision was within the range of legally correct discretionary choices and

produced a permissible, legally correct outcome, the trial court did not abuse its discretion."). Thus, in order for the asserted error to constitute an "error of law" in the plain error context, we must conclude that, had counsel raised a request for the appointment of new counsel, it would have been an abuse of discretion for the trial court to have denied the request and instead allowed defendant to testify by narrative statement. We cannot conclude on this record that, had a request for new counsel been made, the trial court's rejection of the request and decision to allow defendant to testify in narrative form would have been an abuse of discretion. Thus, we conclude that defendant has not established "legal error" and that any error is not plain.

In his preserved fourth assignment of error, defendant contends that the trial court abused its discretion when it denied his request for a continuance so that he could prepare his narrative testimony. Whether to grant a continuance was within the court's discretion. *State v. Thomas*, 266 Or App 642, 643, 338 P3d 762 (2014). Although the trial court could have granted defendant's request, we have reviewed the record and conclude that the trial court did not abuse its discretion in denying defendant's request.

In his unpreserved fifth assignment of error, defendant contends that the trial court plainly erred in failing to give an instruction to the jury that it should not draw any inferences from the narrative form of defendant's testimony. We reject defendant's contention that any error was plain, and we therefore decline to address it.

Affirmed.